*MAY TERM,*
*1838.*

Boyer & Boyer
v.
Williams.

MICHAEL BOYER & WILLIAM BOYER v. JAMES WILLIAMS.

A sowed a tract of public land in wheat; a few days after, B. entered the land. At the ensuing harvest, the wheat was cut by A. though after repeated prohibitions from B. who, after it was so cut, carried off the wheat. A. brought trover. Held, that B. in purchasing the title of the United States, acquired the right to every thing growing on the land, and consequently to the wheat sown by A.; and that the doctrine of emblements had no application here, the seeding not having been legal.

*Cole,* counsel for plaintiff in error:

1. The circuit court erred in refusing to give the instructions asked by defendant. 2. The court erred in refusing a new trial; and 3. The court erred in giving judgment for plaintiff below, which should have been rendered for defendants.

Then, as to the first error assigned, that is to say, the refusal of the circuit court to instruct the jury as required by defendants, I hold it to be clear law, that the United States have complete title to the public land, and complete title to every thing growing in the public land, and that when an individual purchases land from the United States, such person, under the laws of the State, acquires a lawful right to the possession of the land so purchased, and every thing growing in such land—3 Kent's Com. 307. He can have his action of ejectment to recover the possession, rents and profits of the land—Mo. Laws, 234, sec. 2; 281, sec. 28. The defendants surveyed the land in November, 1836, at which survey Williams was present, and removed from the land in the winter. The relation of landlord and tenant, does not exist between the United States and squatters upon the public land. Williams was a squatter, and a *tort feasor,* with a knowledge of the law that he was a *tort feasor;* that he had no rights there, and that he was subject to

MAY TERM,
1838.

Boyer & Boyer.
v.
Williams.

ouster from the land every day by the United States, or a purchaser thereof from the United States. His entry upon the land in July and forcibly cutting the wheat, was a trespass upon the rights of the defendants below, and for which, at common law, Williams might have been indicted. The severance of the wheat from the land could not pass the right thereof to Williams, nor could the taking of the wheat by plaintiffs in error confer upon him a right to recover from them.

In order to recover in this action, the plaintiff must show two things: 1st. Property in himself; and 2d, an unlawful conversion thereof by defendants. Here Williams has failed to show property in himself, and the conversion of the defendants ceases to be a subject of inquiry.

The law with regard to emblements will not apply to this case, because to give a legal right to emblements, in the first place the relation of landlord and tenant must exist; in other words, the sowing of the land by Williams must have been lawful, that is to say, he must have been at the time lawfully possessed of the land. Coke in his comments on *Littleton* says, that "where the estate of the lessee, being uncertain, is defeasible by a right paramount, then he that hath the right paramount, shall have the corn"—Coke's Lit. 55, No. 6; 4 Kent's Com. 71. Again: If a disseisor sow the ground and sever the corn, and the disseisee re-enter, he shall have the corn; because he entereth by a former tiller, and severance or removal of the corn altereth not the case. In the case of Davis v. Connop, it was adjudged that trover lay against an out-going tenant for corn cut by him after the expiration of his term, although sown by him before that time, under the notion of his being entitled to an away-going crop—Price Exch. Rep. 53; 1 Chit. Plead. 149; Wilde. v. Cantillon, 1 Johns. Cas. 123. These authorities show conclusively that when the possession is unlawful, that the right to emblements cannot exist, and it is respectfully submitted, the possession of Williams of the land upon which the wheat was grown, was unlawful possession. The circuit court, therefore, erred in refusing to instruct as required by plaintiff in error. The second error assigned is, the refusal to grant a new trial. The record shows that the plaintiff gave in evidence to the jury, to prove the damages sustained by plaintiff by reason of the conversion, and without this proof the jury could find none; yet they did find damages. Their verdict, therefore, should have been set aside, because

the finding was without evidence, against evidence, and against law. The circuit court, therefore, erred here also. But in conclusion, what would be the effect of a decision in favor of Williams? It would be precisely equivalent to a repeal of the first clause of the second section of the law regulating the action of ejectment, and the proviso to the 28th section of the law regulating forcible entry and detainer, and oust the United States from the possession and disposal of the public land— Laws Mo. p. 234, 16, 281. It would establish the doctrine that the relation of landlord and tenant exists between the United States and persons settled on the public land, and that a person so settled is entitled to an away-going crop, as against the United States, and as against a purchaser from the United States. The third error is, rendering judgment for Williams, when judgment should have been rendered for plaintiffs in error. This has been already fully considered.

*Frissell*, counsel for defendant in error:

At this time it will hardly be contended that the settler on public land is a trespasser, if so, he is a legalized trespasser, and such trespasses are encouraged by the owner of the public lands. The numerous and repeated pre-emption laws show that the United States wish and expect people to settle upon and cultivate public lands; and if so, they do not intend that settlers shall be driven off, and the fruits of their labor taken from them when a person enters the land settled upon. The decision of the court, in the case of James & Massie v. Snelson, carries the principle here contended for as far as required—3 Mo. Rep. 393. And that case goes farther than this, for Massie was not a cultivator of public lands, and his acts were legalized by the laws of Congress, by implication only, if at all. The cultivation and possession of public land, by every person who chooses to cultivate it, are constantly recognized by the laws of Congress; but the cutting of wood and timber from public lands, never has, to my knowledge, been directly approved of by acts of Congress; and in this lies the difference between the present case and the case of James & Massie v. Snelson. It will not be denied on the part of the plaintiff below, that the man who pays his money for, and acquires a title to, a piece of public land, is entitled to the profits arising from such land, from the date of the certificate of entry; but it is not conceded that that man can forcibly intrude upon the possession of another and

22

drive him off, and make him lose the fruits of his labor, or by taking possession of the crop growing upon the ground. Permanent improvements, such as buildings, fruit trees, fences, and, in fact, all that would pass with the land if sold, under the general name of appurtenances, unquestionably become the property of the person who enters the land; but not so with the property that is strictly personal. Our laws consider corn growing in the field as other personal property, and, as such, it is liable to execution—Stat. of Mo. p. 256, sec. 17; Whipple v. Fort, 2 Johns. 418; Stewart v. Dougherty, 9 Johns. 108. Now suppose the sheriff had levied upon the wheat after it had been sown, and before the entry of the land made by Boyer, and it had been sold under the levy, the purchaser at the sheriff's sale would have acquired a good title to the wheat, and when it was fit for harvest, he might have gone with his servants and have cut the wheat, and carried it away—see Stewart v. Dougherty, 9 Johns. 108, which is a case in point. The doctrine of emblements, at common law, appears to apply to the present case. Boyer became the landlord, who could demand rent, if any thing at all, in the same manner that the United States could demand rent of settlers upon public lands, if they would, and as they have done of the workers of mines. There are many ways by which Boyer could assert his rights, without taking forcible possession of the land. He might have sued in ejectment and recovered rent as damages, if the jury would have given him any; he might have sued for use and occupation, and have recovered what a jury would have thought right, but it is not probable he would have recovered much, for any jury would have said that the permanent improvement upon the land was as much as Boyer could, in conscience, have asked for the privilege of taking off a growing crop of wheat.

The main argument in favor of Boyer's act of taking forcible possession of the wheat, I suppose, will be derived from the proviso in the 28th section of the law respecting forcible entries and detainers. The proviso is as follows: "Provided, that any person having authority from the United States, or lawfully claiming under them, shall have power to enter into such lands." The fair and only consistent construction that can be put upon this clause of the law is, that the person who has the settlement or field upon public lands, shall not have the remedy of forcible entry and detainer against a person who buys the land of the United States, and enters upon it

peaceably and according to law. Any other construc-. tion put upon this clause, would war upon and be utterly inconsistent with the first sections, which contain the subject matter of the whole law. It is a rule of construction, that each part of a law shall be so construed that the whole shall be consistent. The first section enacts "that no person shall enter upon or into any lands, tenements, or other possessions, and detain or hold the same, but where entry is given by law, and then only in a peaceable manner"—Stat. of Mo. p. 277, sec. 1. The 2d and 3d sections give the individual cases that are included in the first section, and undoubtedly include the present state of facts; and unless the proviso of the 28th section be construed to mean that the person lawfully claiming under the United States may enter and take possession of the lands thus claimed, in any manner he may see proper, with force or strong hand, or with weapons, &c. the Boyers must have violated the law.

Again: Williams claimed and held possession of the land no further than was necessary to remove such property from the land as is strictly personal, and to which the Boyers had no more right than they would have to corn in a crib, or bacon in a smoke-house, upon the land. Their title to the land never has been disputed by Williams, and Williams, from the date of their entry, has never claimed any further right than was necessary to secure his own personal property. That wheat, corn, &c. actually growing, is personal property, cannot for a moment be disputed, unless we are to overturn the decisions of both England and America, especially where the land changes owners during the time a tenant is in possession, who is not the owner of the lands. Where A. sells or devises land to B, the corn, &c. growing, passes with the land; but if A. leases to C, and C. sows corn, and before severance, A. sells the land to B, C. shall have the corn. This property in emblements is given for the encouragement of agriculture. Moreover, the tenant who has sown has acquired a property in the corn by his expense and labor. It was his own in its original state, and his property shall not be divested by being sown, &c.—Toll. Ex. 204-5. Corn or any other product of the soil, raised annually by labor and cultivation, is personal estate, and may be taken in execution—Penhallow v. Dwight, 7 Mass. Rep. 34. The United States may be considered the lessors, for they permit every one who pleases to take possession of the public domain, and do not consider them trespassers; and the occupiers of pub-

lic land may, with regard to the government, be considered tenants at will, and as they must hold from year to year, in order to get the benefit of what they occupy the land for, (that is, the raising of crops,) the government, by law, cannot put the tenant out of possession without giving him notice. The selling the land is notice, and the tenant or occupier is then bound to quit at the end of the year from the date of the sale. Williams did so. He only claimed the right to remove his wheat already sown. This reasoning brings this case directly within the rule laid down by Toll. Ex. 204–5. If A. leases to C, and C sows corn, and before severance, A. sells the land to B, C shall have the corn.

EDWARDS, Judge, delivered the opinion of the court.

This was an action of trover, commenced by Williams against the Boyers, to recover damages for the conversion of a crop of wheat. The Boyers pleaded not guilty, and Williams joined issue on this plea. Verdict and judgment for Williams. The Boyers moved for a new trial, and the court overruled the motion.

On the trial, Williams proved that in August or September, 1836, he sowed down a field of wheat, which he cut in July following. The Boyers forbid Williams to cut the wheat, and claimed it themselves, and afterwards took it off. The Boyers then gave in evidence a certificate of the receiver of the land office at St. Louis, dated the 13th day of September, 1836, for eighty acres of land, including the field of wheat sowed by Williams as above stated.

The defendants moved the court to instruct the jury:

1. That if they believed from the evidence that the defendants entered the land with the United States in September, 1836, upon which the wheat was grown, which is the subject matter of this action, and that said wheat was sown by plaintiff, on said land, in August or September, 1836, who cut the same against the consent of the defendants, then the plaintiff cannot recover in this action.

2. That the purchaser of land from the United States acquires title to the land so purchased, and to every thing growing at the time upon the land so purchased. These instructions the court refused, and the defendants excepted.

The errors assigned, are: 1. That the court refused

the instructions asked; and 2d, that the court overruled the motion for a new trial.

In refusing the instructions asked by the defendants, the court clearly erred. The United States have complete title to the public lands, and complete title to every thing growing on the public lands. The purchaser of land from the United States acquires by the purchase the same title to the land, and to every thing growing upon the land, which the United States had before the sale. The doctrine of emblements does not apply here. To entitle the party to emblements, the sowing of the land must have been legal. The court erred in refusing to grant a new trial also. The verdict of the jury was against the law and against the evidence. The judgment of the circuit court ought therefore to be reversed, and the other judges concurring, it it is reversed.

A sowed a tract of public land in wheat; a few days after, B. entered the land. At the ensuing harvest, the wheat was cut by A. though after repeated prohibitions from B. who, after it was so cut, carried off the wheat. A. brought trover. Held, that B. in purchasing the title of the United States, acquired the right to every thing growing on the land, and consequently to the wheat sown by A.; and that the doctrine of emblements had no application here, the seeding not having been legal.