## RESERVATION STATE BANK v. HOLST *et al.*

1. A controversy as to the respective rights of parties claiming public land by virtue of pre-emption entries is within the exclusive jurisdiction of the Land Department, but, while a contest is pending before such department, courts will protect the parties who have acquired peaceable possession of the land, in their possession, until the contest is terminated.

2. Where an applicant for land subject to homestead entry is permitted to enter the same, he acquires the right to the exclusive possession thereof, and there can be no rightful occupation of a part of such land by any other person as against him.

3. A lease of land alloted to an Indian on a reservation, made by such Indian, and not approved by the Secretary of the Interior, is invalid, and the assignee thereof acquires no rights thereunder.

4. Defendant H., the assignee of an invalid lease from an Indian allottee of reservation lands, secured a relinquishment of the land from such allottee, and made application for a homestead filing thereon, which was returned to him by the Land Office officials without any action on the same. Thereafter he sowed a part of the land, and mortgaged the prospective crop to plaintiff to secure indebtedness due it from him. Subsequently defendant L. began his residence on the land, made an alleged homestead entry, and received a receiver's receipt therefor. H. renewed his application, and, on being informed that the land had been entered by L., gave notice of contest. L. harvested the crop sown and plaintiff sued to recover it. Held, that the decision of the Land Office allowing L. to make the entry was conclusive and binding on the courts so long as the matter was pending before them, and that L. thereby acquired title not only to the land, but also to everything growing thereon, including the crop in question, and plaintiff could not recover. FULLER J., dissenting.

(Opinion filed July 1, 1903.)

Appeal to circuit court, Roberts county; Hon. A. W. CAMPBELL, Judge.

Action by the Reservation State Bank against Peter Holst

and W. D. Lane. Judgment for defendant Lane, and plaintiff appeals. Affirmed.

*Howard Babcock* and *Batterton & Humphrey*, for appellant.

*Thos. L. Bouck*, for respondent.

CORSON, J. This is an action in claim and delivery brought by the plaintiff to recover possession of a certain crop of wheat grown in the year 1901 on a tract of land in Roberts county. The plaintiff claimed to have a special interest in this crop of wheat, which consisted of about 1,200 bushels, by virtue of a chattel mortgage given by the defendant Holst to the plaintiff to secure the payment of $300, and a seed wheat lien for the sum of $80 for grain furnished from which the crop in controversy was grown. Defendant Lane answered by general denial, and the defendant Holst made default. Verdict was directed by the court in favor of the defendant Lane, and from this judgment the plaintiff has appealed.

The facts may be briefly stated as follows: The land upon which the crop was grown was allotted Indian land under what is known as the "Dawes Act," and which allotment was made some years prior to the year 1889, and before any of the parties to the action had any connection with the land. The patent issued to the Indian was a preliminary patent, by which the government held the land in trust for the Indian for a term of 25 years. The allottee was in fact a Santee Indian, and was not entitled to an allotment upon the Sisseton and Wapeton reservations, within which the land was situated. On July 10, 1899, the allottee, John Wing, leased the land to one Charles Larson, and thereafter, on the 16th day of November, the said lease was assigned to the plaintiff bank, and

17 S. D.—14

thereafter, on the 10th day of March, 1901, the same was assigned by the bank to the defendant Holst.    This lease was not made in accordance with the rules and regulations of the Department of the Interior, and was not approved by the Secretary of the Interior, but was an ordinary lease of the land in question.    On the 16th day of November, 1900, the defendant Holst secured a document from John Wing, purporting to be a relinquishment of the land in question, with the intention of making a homestead entry.    On the same day the said Holst made an application to the Land Office at Watertown for a homestead filing upon the land, together with the necessary fees, but said homestead filing was returned to the defendant Holst by the officers of the Land Office at Watertown on the 29th day of January, 1901, without any action being taken thereon. During the years 1899 and 1900 a considerable amount of breaking was done by the bank, and the said Holst, in order to secure the benefit of the breaking, and to provide for the repayment of the money expended by the bank upon March 10, 1901, took an assignment of the lease from the bank, and upon the first day of April, 1901, Holst began plowing upon the land, and about the middle of the same month the grain was sown, resulting in the crop which is the subject of this action.    In payment of the lease so assigned to Holst, amounting to $300 and to secure $80 for seed wheat to seed the land, Holst executed a chattel mortgage to the plaintiff, under which it seeks to recover the wheat in controversy.    Holst cared for the said crop of grain until it was ready to harvest.    Some time in March, 1901, the defendant Lane caused lumber to be placed upon the land, and thereafter a small building was erected thereon, and, some time in the month of April, Lane

began his alleged residence upon the said land.   Lane never attempted to do any work on that part of the land upon which the wheat was raised.   Upon the 24th day of May, 1901, Lane made an alleged homestead entry upon the land, and received a receiver's receipt therefor.   Thereafter an action was brought by Lane against Holst to restrain him from interfering with or harvesting said crop of grain, and on July 22nd an order was issued by the circuit court of Roberts county restraining Holst from interfering with the possession of the crop in question.   Lane, after the order of injunction was served, harvested the crop sown and raised by Holst, and to recover this grain this action is instituted.

There was evidence tending to prove that Holst had a house, barn, and granary upon the land in controversy during the summer, and that he moved into the house and lived there a part of the time.   There was also evidence tending to prove that Holst, on June 13, 1901, again renewed his application at the Land Office to enter the land as a homestead, and was informed that the same had been entered by the defendant Lane, and that thereupon he gave notice that he would contest the right of Lane to enter the same.   It will thus be seen that the right to the land upon which the wheat was grown is a subject of contest between the said Holst and the said Lane before the United States Land Office, Holst claiming it by virtue of an entry upon the land in 1900 and an application to enter made at that time, and also by virtue of his entry upon the land and his improvements made in the spring of 1901, and the second application to be permitted to enter the same; and that Lane claims by virtue of an entry made in the spring of 1901, improvements made thereon, and an application made to the Land Office, and the acceptance of the same.

Such a controversy is within the  exclusive jurisdiction of the Land Department, and, while a contest is pending, courts have no jurisdiction to determine the rights of the respective parties to the land involved in that controversy, but the courts recognize the fact that two parties may acquire peaceable possession of the same tract of land, and will, while the contest is pending before the  Land  Department to determine the rights of the respective parties to pre-empt the same, protect such parties in their possession until such contest is terminated. In the leading case of Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732, the Supreme Court of the United States says: "Undoubtedly there have been cases, and may be cases again, where two persons making settlement on different parts of the same quarter section of land may present conflicting claims to the right of pre-emption of the whole quarter section, and neither of them be a trespasser upon the possession of the other, for the reason that the quarter section is open, uninclosed, and neither party interferes with the actual possession of the other. In such cases, the settlement of the latter of the two may be bona fide for many reasons.  *  *  * But all these cases suppose that the parties began their possession, and made their settlement. and built their houses on lands not in the actual possession of another."   Frobes v. Driscoll, 4 Dak. 336, 31 N. W. 633.

A different rule, however, is applied to a homesteader. While the pre-emptor initiates his right by settlement upon the land, the homesteader is required to first file with the land officers his affidavit, and enter the land as a homestead. If the land is subject to homestead, and the applicant is permitted to enter the same, he immediately acquires the title to the land so entered, subject to be defeated by a failure to com-

ply with the provisions of the law. The homesteader, upon such entry, acquires the right to the exclusive possession of the land so entered by him. There can, therefore, be no rightful occupation of a part of such land by any other person as against the homesteader. When, therefore, Lane was permitted by the Land Department to enter the land in controversy, he became entitled to the exclusive possession of the entire tract so entered, and the possession by Holst of any portion of the land, after Lane's entry of the same at the proper Land Office, was unauthorized, without regard to the rights of the respective parties, as the decision of the land officers in allowing Lane to make the entry is conclusive and binding upon the courts so long as the matter is pending before them. Holst's entries upon the land in the fall of 1900 and spring of 1901 were ineffectual for any purpose, as the same were not made in the manner prescribed by law and by permission of the proper land officers. Holst may have intended in good faith to take up the land as a homestead, but he failed to comply with the requirements of the law until after Lane had ac tually made his entry.

The assignment of the purported lease to Holst by the Indian, John Wing, was of no validity, and he acquired no rights under it, as a lease from an Indian is invalid unless approved by the Secretary of the Interior. United States v. Flournoy Real Estate and Live Stock Co. (C. C.) 71 Fed. 576; Id., 69 Fed. 886; Buckhalter v. Nuzum, 9 Kan. App. 885, 61 Pac. 310.

The defendant Lane, therefore, by his entry of the land in May, 1901, acquired not only the title thereto, but the title to all that might be growing thereon at the time, as neither Holst nor any other person was authorized to retain possession of the

land after such entry.   It is well settled that a party who pur-
chases land of the United States, and pays the government
price therefor, and receives a receiver's receipt, acquires not
only the title to the land, but of everything growing  thereon.
Rasor v. Qualls, 4 Blackf. 286, 30 Am. Dec. 658; Boyer v. Wil-
liams, 5 Mo. 335, 32 Am. Dec. 324; Floyd v. Ricks, 14 Ark. 286,
58 Am. Dec. 374.

In Boyer v. Williams, supra, the Supreme Court of Miss-
ouri uses the following language:    "The United States has
complete title to the public lands, and complete title to  every-
thing growing on the public lands.   The purchaser from  the
United States acquires title to the land, and to  everything  on
the land, which the United States had before  the  sale.   The
doctrine of emblements does not apply here.    To  entitle  the
party to emblements, the sowing must have been legal. "

The same rule undoubtedly applied to a homesteader, who,
by his entry, becomes entitled to the immediate  possession of
the land, and, necessarily, to all that may be growing thereon,
as he, by the entry, succeeded to the government title.

The Supreme Court of Minnesota, in Red River & Lake of
the Woods R. Co. v. Sture, 32 Minn. 95, 20 N. W. 229, in  con-
sidering this question, uses  the  following  language:  . "It is
claimed, however, that an entry under the homestead law gives
the settler no vested rights in the land until  the  issue  of  the
patent.   To this we cannot assent.   We are aware that it  has
been authoritatively decided, in Frisbie v.  Whitney,  9  Wall.
187, 19 L. Ed. 668, and the Yosemite Valley Case, 15 Wall. 77,
21 L. Ed. 82, that occupation and  improvement  on  public
lands, with a view of pre-emption, do  not  confer  any  vested
right in the land as against the United States; that this is only

obtained when the purchase money has been paid, and the receipt of the Land Office given to the purchaser. This is put upon the ground that until such time the proposed pre-emptor has merely a right to be preferred in the purchase over others, provided a sale is made by the United States. But a homesteader, after entry, occupies an entirely different position. He has in fact purchased. His entry, which is made by making and filing an affidavit and paying the sum required by law, is a contract of purchase which gives him an inchoate title to the land, which is property. This is a substantial and vested right, which can only be defeated by his failure to perform the conditions annexed."

These views lead to an affirmance of the judgment, and the same, and the order denying a new trial, are affirmed.

FULLER, J. dissenting.