[No. 473. Decided July 20, 1892.]

HALL & PAULSON FURNITURE COMPANY, *Respondent*, v. T. R. WILBUR AND E. L. JOHNSON, *Appellants*.

LANDLORD AND TENANT—UNLAWFUL DETAINER—COMPLAINT—LANDLORD'S TITLE—ESTOPPEL—EVIDENCE—DAMAGES.

In an action for unlawful detainer, a complaint which sets out a written lease and an acceptance of it by the lessees, and entry by them under it, is sufficient without alleging the plaintiff's title to the premises.

The lessees of tide lands from a person in possession thereof cannot, in an action for unlawful detainer, dispute the title of their landlord on the ground that, under the tide land act (Laws 1889-90, p. 431), they are "improvers" of such lands, and, title never having been in the landlord, they are not bound or estopped by the terms of their lease.

The occupant of premises under a lease from a corporation cannot question the power of the corporation to execute the lease.

Where defendant, on his direct examination, declared that he acted upon information derived from counsel, it is not a violation of the rule against confidential communications to cross-examine him as to what advice his attorney gave concerning the advisability of resisting plaintiff's demands.

In an action for unlawful detainer, where the prayer of the complaint is for the stipulated rent due, it is error for the court to give judgment for twice that sum, as the statute authorizing such judgment is directory only.

*Appeal from Superior Court, King County.*

*Ronald & Piles*, for appellants.

*Jacobs, Jenner, Legg & Jacobs*, and *White & Monday*, for respondent.

The opinion of the court was delivered by

STILES, J.—In an action for unlawful detainer, like any other action under the code, the facts are to be stated. The amended complaint shows as clearly that the appellants were continuing in possession "without the permission" of

their landlord as if it had said so in the precise words of the statute. Appellants seek to have the court construe "the person entitled to the premises," who is the person entitled to sue in this character of action, to be necessarily something more than one who stands in the contract relation of landlord to the occupier of premises under a lease. It is claimed that the complaint should allege that the plaintiff is entitled to possession, but we do not so understand it. In this case a written lease was pleaded, and an acceptance of it by the lessees, and an entry by them under it. Inasmuch as under the general rule they could not deny their lessor's title under these circumstances, except in certain limited cases, the propriety of the appellant's claim is not well founded. We, therefore, hold the amended complaint good.

The first affirmative defense stated the only ground available for the defeat of the action, viz., an alleged fraud in procuring the execution of the lease. Some of the matter contained in the second and third defenses, to which a demurrer was sustained, was also embraced in the first defense; therefore, as to that matter, the action of the court was not prejudicial. The remainder of the second and third defenses, as also the fourth defense, was devoted to an attempted pleading of conclusions of law embracing parts of the constitution and statutes of the state. Such pleading is far from commendable under any practice, and especially under our code, and merely tends to burdening the record, and thrusting upon the court and jury false and immaterial issues.

Under the pleadings in this case, there were but three issues presented for trial by the jury, viz.: (1) Were the appellants induced to enter into the lease by any fraudulent representations of the respondent? (2) Were the appellants in possession before the lease was executed or agreed to be

executed, or, in other words, did they get their possession under the lease? (3) Was there any rent due and unpaid?

It is true that the complaint averred a possession long prior to the execution of the lease, and the answer denied it. But the allegation was immaterial surplusage, and the denial of it raised no issue. The material allegations were that the lease was executed and delivered, and that possession was given by the respondent and taken under it. It is true, also, that the execution of the lease, and that the premises were unlawfully withheld, were denied. But these denials were sham and false, as appeared by the affirmative defense, which set out the lease and admitted a withholding. Upon all these points the court fairly tried the case, and submitted it to the jury, which decided against the appellants.

We find no error on the part of the court, unless it be in permitting parties to make a record of unreasonable length, involving matters having no relevancy to the merits of the case or the rights of either party, over its own protest, and after its repeated rulings, emphasized by threats of punishment for contempt. In this connection we cannot refrain from a forcible condemnation of a practice, which seems to be growing, of including in a statement of facts page after page of colloquy between the court and counsel. It is done merely because the stenographer has taken it down and reports it with his notes of the testimony. When a question is asked a witness, and there is objection made, the objection should be stated once, and once only. The arguments of counsel have nothing to do with the objection, and should not appear in the record. The decision of the court is properly included, even if given at length, if there is any special importance in the reasons assigned for its rulings. But after the court has once ruled on an objection it should not tolerate subsequent discussion,

and if any takes place it should not appear in the statement. If the ruling is changed after such discussion, the last ruling becomes the action of the court, and all that previously occurred is not material. The statement in this case which covers 425 pages, might easily have been condensed into one-tenth of the volume; and allowing that it was desirable, in the minds of counsel, to present all the testimony, one-quarter of it could have been left out, and nothing would have been lost but fruitless discussion. Such records must be extremely burdensome in expense to parties, and they are greatly so to this court in the time they require for perusal. They are wholly unnecessary in actions at law and special proceedings, and we trust it will be the aim of the profession to follow a better system.

The main question over which the contention in this case arose was the fact that the leased premises were a portion of the tide flat lands adjacent to the city of Seattle. Prior to the fire of June 5, 1889, the respondent had its manufacturing plant located on an area of tide flats covering about two acres. The fire destroyed its mills and lumber yard, which had been built on piles, and left only the stumps of the piles and a heap of mill refuse. It repaired the burnt piles by splicing them, set other piles, capped them all, laid stringers across them so that buildings could be erected on them, and offered portions of the area so prepared on lease for a term of five years from August 1st. The appellants, with full knowledge of the situation, September 16, 1889, took a lease of a tract 34 by 80 feet, fronting on Commercial street, at $34 a month rent, entered into possession under the lease, and erected a three story building, which they, in turn, sublet to their tenants. They paid their rent without objection until some time after the passage of the tide land acts of 1890; thence until January 1, 1891, they continued to pay, but under protest. At the later date they refused to pay any longer, or to

surrender the premises, on the ground that under the new order of things they were "improvers," and no longer bound by their lease. To the respondent's complaint for unlawful detainer they urge the general objection that because the respondent had no title to the leased premises the lease was void, and they were not bound or estopped by it.

"No proof of title is required in this action, when it is brought by a landlord, since if a tenant has once recognized the title of the plaintiff, and treated him as his landlord, by accepting a lease from him, or the like, he is precluded from showing that the plaintiff had no title at the time the lease was granted." Tayl. Landl. & T., § 705.

There is no exception to this rule, excepting in the case of fraud, which overturns all things, or where the lessee's possession was not taken under the lease, but by prior and independent action; and on both these points, under proper instructions, the jury decided against appellants.

There is one other class of cases, however, where the action is not maintainable, not because of want of title or possession in the lessor, but because by positive statute, or because of public policy, the contract between the parties is unlawful. Such instances are illustrated by the *Arkansas Hot Springs Cases*, 92 U. S. 698, where squatters upon the reservation created by act of congress, which expressly prohibited settlement or occupation by anyone, undertook to enforce the terms of leases made by them to third persons. It was held justly that the lessors proposed to do, by their contracts and their actions, what the law forbade, which no court would uphold. So in *Bower v. Higbee*, 9 Mo. 256, a preemptioner who had not made his final entry executed a lease of his claim for ninety-nine years, and it was held that, inasmuch as the lease was merely a cover to avoid the statutory prohibition against conveyances, no effect would be given to it. But this is not such a case. There was not at the time this lease was executed, nor is

there now, any law against the occupation of tide lands. True, until the acts of 1890, occupants of such lands were technically trespassers, and their structures were purprestures. But neither the federal government, nor the territory, nor the state ever sought to interfere with such occupancy, whether it was taken in good faith or not. On the contrary, by its implied declarations in the tide land acts, the state has approved such occupancy when taken in good faith prior to the passage of those acts. For its own purposes it has seen fit to withdraw that encouragement from any subsequent occupiers, but it has not yet pronounced it either unlawful or immoral to so occupy. Therefore it was not unlawful for these parties to contract with reference to a possession which the respondent had. They did contract, and the appellants agreed, in consideration of the possession they were to receive, to pay certain rent, etc., or, upon failure so to do, to return the possession so received. Now they call upon the courts to sustain them in a repudiation of their solemn agreement, and an assertion of their own superior claim, acquired by means of the possession so surrendered to them, to do which one of the most firmly settled rules of law must be disregarded. To state the proposition is but to anticipate its rejection, which must certainly follow. It is possible that, inasmuch as the lease purports to demise the premises, which implies a covenant of title, the appellants could leave the premises and refuse to pay rent thereafter, but they could not so refuse without a previous surrender of the possession. Numerous other propositions laid down by appellants are not disputed, but they are not applicable.

The point is made that the making of such a lease was not within the corporate powers of the respondent, and for the sake of the argument the truth of the allegation may be admitted. The answer to this is that the appellants have dealt with it as though it were authorized to make

the lease, and have received value on the faith of their so dealing, and they cannot now be heard to urge such an objection.    If this point is claimed to cover the power of the corporation to acquire property of the kind or extent here involved, then the answer is that no private person, and particularly no party to a contract with the company concerning such property, can question its right.    The state only can make objection.

For what purpose maps were offered on either side, we are unable to discover, and, therefore, exceptions taken in connection with them were immaterial.    The property was described by metes and bounds in the lease, and it was admitted that it was tide land belonging to the state.

Wilbur, one of the appellants, was required on cross-examination to answer questions tending to disclose what advice his attorney gave him concerning the advisability of resisting the respondent's demands.    This was done on the ground that on the direct examination he had declared that he acted upon information derived from counsel, and that pursuit of the inquiry, so as to develop what the information was, was legitimate.    As there was no question of appellants' good or bad faith in resisting the collection of rent, what their outside information was, was immaterial. But the course permitted by the court did not violate the rule as to confidential communications between attorney and client, because the client himself first opened the matter.

The prayer of the complaint was for the stipulated rent for two months, $68.    The court, following the statute, rendered judgment for twice that sum.    We are of opinion that the statute is directory only, and that the prayer should govern the recovery in such a case.

With the principal of the money judgment reduced to $68, the judgment will be affirmed.    Costs to respondent.

ANDERS, C. J., and HOYT, DUNBAR, and SCOTT, JJ., concur.