[No. 1054. Decided January 6, 1893.]

HALL & PAULSON FURNITURE COMPANY, *Appellant*, v. HENRY E. SCHMIDT, *Defendant*, AND FRED KIRSCHNER AND CHARLES KENNETT, *Respondents*.

PRINCIPAL AND SURETY — DISCHARGE OF SURETY — POSTPONEMENT OF PROCEEDINGS.

Where, in an action of unlawful detainer, the defendant in order to stay a writ of restitution gives bond with sureties, conditioned to pay plaintiff such sum of money as he may recover for the use and occupation of the premises, and all damages plaintiff may sustain by reason thereof, and all the costs of said action, the sureties upon such bond are not discharged by reason of a stipulation entered into between their principal and the obligee, providing that the trial of the cause should be deferred pending appeal to the supreme court of another action involving the same questions, and should be determined by the decison rendered on such appeal.

*Appeal from Superior Court, King County.*

*Jacobs & Jacobs*, for appellants.

*Turner & McCutcheon*, and *P. P. Carroll*, for respondents.

The opinion of the court was delivered by

DUNBAR, C. J. — This was an action on a bond furnished by defendant Schmidt in a certain action of unlawful detainer, in which the appellant was plaintiff and Schmidt was defendant.    Respondents were sureties on the bond. Separate demurrers were filed to the complaint, and sustained by the court.    Appellant elected to stand on its complaint; whereupon the court rendered judgment in favor of the respondents, respectively, for their costs and disbursements.    The errors alleged are the sustaining of respondents' demurrers and the rendering of judgment thereon.

The complaint shows that on February 10, 1891, appellant brought an action, No. 10257, in the superior court against the defendant Schmidt for the recovery of the possession of certain premises in King county, and also for the recovery of the sum of $220 as rent for said premises. That subsequent pleadings were filed by the parties and issues duly made, and that a writ of restitution was granted and issued to the appellant.    That on July 15, 1891, defendant was granted leave by the superior court to retain possession of the premises upon filing a bond in the sum of $1,000, with satisfactory sureties; that said Schmidt on July 24, 1891, filed a bond with the clerk, and the execution of the writ of restitution was thereupon stayed.    That on November 21, 1891, the superior court ordered that the bond of defendant Schmidt be increased to $1,600.    That on November 27, 1891, said Schmidt as principal, and the respondents as sureties, pursuant to said order of the court, jointly and severally executed and filed a bond in the penal sum of $1,600, conditioned to pay plaintiff such sum of money as plaintiff might recover for the use and occupation of the said demised premises described in the complaint, or any rent due, together with all damages that plaintiff might

sustain by reason of the defendant's occupying or keeping possession of said premises, and all the costs of said action. That on or about the 30th of December, 1891, the plaintiff and defendant in said action, by their respective attorneys, entered into an agreement or stipulation in writing whereby said plaintiff and defendant agreed to stand to and be bound by the decision of the supreme court of the State of Washington in the case of *Hall & Paulson Furniture Co. v. Wilbur*, 4 Wash. 644 (30 Pac. Rep. 665), which involved the same general principles as were involved in said case No. 10257, and which had been tried in the superior court of King county, and a verdict therein returned against the defendant, and defendant's motion for a new trial denied, and judgment by said superior court entered in the lower court in favor of the plaintiff and against the defendant therein, from which judgment an appeal was about to be taken to said supreme court. That it was agreed by said stipulation that the trial of said cause should be deferred pending said appeal, and if upon such appeal the supreme court should decide said appealed case on the. merits against the defendants therein, Wilbur and Johnson, then the further litigation of said action should cease; that the defendant Schmidt should pay all costs in the superior court taxed in said cause No. 10257, and that said Schmidt should pay all back rent then remaining due for the use of said premises, as provided by the terms of said lease; that said Schmidt should acknowledge his tenancy of said premises under the plaintiff, and remain in possession of the premises leased during the continuance of the lease on paying the rent according to the terms thereof.

The complaint further showed that on September 29, 1892, the supreme court of the State of Washington having decided said appealed case of *Hall & Paulson Furniture Co. v. Wilbur* in favor of the plaintiff, and in favor of the right of the plaintiff to lease said demised premises

and collect rent therefrom, on motion of appellant and on said stipulation and the consent of the defendant, Schmidt, the superior court rendered judgment in said action No. 10257, in favor of appellant and against said Schmidt for the sum of $2,660, as rent due for the use and occupation of said premises from January 1, 1891, to October 1, 1892, together with costs and disbursements of suit taxed at $74.70, and interest amounting to $66.50; and declaring said lease forfeited unless the defendant Schmidt should, within ten days from September 29, 1892, pay or cause to be paid to the plaintiff said judgment and costs, and acknowledge in writing his tenancy of the said premises, and file such acknowledgment with the clerk; all of which said Schmidt has neglected and refused to do.   The complaint alleges the amount due, the judgment, breach of the bond by defendant Schmidt and the other defendants, and asks for judgment.

The pertinent question here is, what effect had the stipulation set forth in the complaint on the rights of the sureties?

No question is raised as to the regularity of the proceedings in the original action prior to the filing of the stipulation therein.   It is claimed by the appellant that judgment against the principal is conclusive against the sureties unless collusion or fraud is alleged and proven; that without said allegation and proof the sureties can question neither the validity nor the amount of said judgment.   This contention seems to be sustained by *Tracy v. Goodwin*, 5 Allen, 409, and by the cases cited by 2 Brandt on Suretyship, § 632.

But it seems to us that it is not necessary to go to this extent to sustain appellant's contention that the sureties in this case should not be discharged.   It is conceded by appellant that the liability of a surety is not to be extended beyond the terms of his contract, and that the liability

cannot be varied or enlarged by judicial construction; but it is contended that the complaint in this case does not show that the liabilities of the sureties were extended beyond the terms of their contract, or that they were in any wise enlarged or varied.   This contention, we think, is fully sustained by *Boynton v. Phelps*, 52 Ill. 210; *Conner v. Reeves*, 103 N. Y. 527 (9 N. E. Rep. 439); *Tracy v. Goodwin*, 5 Allen, 409; *Townsend National Bank v. Jones*, 151 Mass. 454 (24 N. E. Rep. 593); *Steinbock v. Evans*, 122 N. Y. 551 (25 N. E. Rep. 929).

This latter case is as near the case at bar as any one particular case is likely to be like another.   There it was held that the mere postponement of one of the ordinary proceedings in a case in which an undertaking had been given did not release the sureties.   There an order of arrest was issued; defendant was arrested and on giving an undertaking as prescribed was discharged; he answered, denying the alleged false pretenses.   Thereafter the parties entered into a written stipulation by which defendant withdrew his answer; plaintiff agreeing not to enter judgment before a day specified, and in case defendant paid the debt in installments, as stated, then that the action should be discontinued.   In case defendant made default, and plaintiff entered judgment, it was stipulated that he should have the same right to enforce the judgment as if it had been entered on a verdict in plaintiff's favor.   The stipulation contained a clause to the effect that, while defendant recognizes his full liability for the debt, he "disclaims any admission of the truth of the allegations of fraud," and enters into the stipulation solely to provide security for the payment as stipulated, and to provide a remedy in case of default. Subsequently defendant, by another stipulation, waived notice of application for judgment, and consented that judgment might be entered for the amount demanded in the complaint.   Both stipulations were entered into without

the knowledge of defendant's sureties. Judgment was entered upon the stipulations. In an action upon the undertaking, *held*, that the first stipulation did not amount to a waiver of the charge of fraud, and that the sureties were not discharged by the stipulation to delay entry of judgment. In that case the court said:

"We do not think that a mere postponement of one of the ordinary proceedings in a case in which an undertaking has been given releases the sureties from liability. The rule contended for by the appellants would lead to the discharge of sureties on undertakings and legal proceedings in nearly all cases where the postponement of the day of judgment was had by consent of the parties to the action."

And so in this case, the stipulation here did not in any sense enlarge the liabilities of the sureties, and did not go further than the authority of the principals to stipulate for a continuance. It has never been held, and never can be held, in the interest of the orderly transaction of suits, that the principals to a suit cannot stipulate for a continuance of the cause from time to time, or from term to term, as may best suit their convenience, without consulting and obtaining the consent of the sureties.

It is not difficult to conclude from the allegations of the complaint that this stipulation was entered into for the benefit of both parties and to save the incurring of unnecessary costs, and the result shows that the principal, for whose obligations the sureties were bound, was saved a large amount of costs and disbursements by reason of the stipulation.

In *Conner v. Reeves, supra*, the court holds that, as a general rule, in an action upon a bond of indemnity against judgments, the sureties thereon are concluded, by the judgment recovered against the obligee, from questioning, except for fraudulent collusion for the purpose of charging the sureties, the existence or extent of his liability in the

action wherein it was rendered. Where, however, the judgment was taken by consent of the obligee, while he is not excluded from the protection of the indemnity, the judgment is presumptive evidence only against the sureties, and they are at liberty to show that it was not founded upon any legal liability or that it exceeds such liability. In that case the court very well said:

"Can it be affirmed, as a matter of law, that the conditions of the bond only covered judgments obtained upon hostile and adverse litigation, and that no discretion was left in the sheriff to consent to a judgment, although he believed that by so doing money would be saved to the parties ultimately liable? This, we think, would be a too strict interpretation of the contract."

The judgment in this case was rendered by the same court in which the action was commenced and is in no way analogous to the cases cited by the respondents where, after the commencement of an action and bond given, the principals submitted their case to arbitration and judgment was rendered by another court.

We have examined all the cases cited by respondents, and none of them sustain their position. Murfree on Official Bonds, § 755, states the proposition that "a surety is released by the privity of the obligee to the breach of the bond, or by the interference of the beneficiary which causes a breach of the bond." This proposition no doubt is correct, but there are no cases cited under it which would sustain the theory that the circumstances as set up in this complaint would amount to a breach of the bond, or an interference of the beneficiary which causes a breach of the bond. In *Niblo v. Clark*, 3 Wend. 24, it was held that a license or permission by a plaintiff to a defendant to depart the state, and an agreement that all proceedings on the judgment against him shall be stayed until his return, may be pleaded in bar to an action against the bail, on the

recognizance.   The decision proceeds upon the ground "that it is an act of fraud in the plaintiff, after having induced the principal to depart by agreeing to suspend all proceedings against him (and, of course, against the bail), to avail himself of such absence, induced by his own act, to charge the bail."   And, "that the plaintiff has, by his act, greatly increased the risk and hazard of the surety, by entering into an arrangement with the principal which induced him to leave the state."   The case can have no bearing on the case at bar.   In *Rathbone v. Warren*, 10 Johns. 586, it was held that where a plaintiff made a written agreement with the defendant, against whom he had obtained judgment, and who was about going to sea, that he would not issue out execution against him, for the purpose of fixing the bail, until after a certain day, and the defendant paid the plaintiff a sum of money in consideration of this indulgence, and this arrangement was without the knowledge and consent of the bail, it was held to discharge them.   This, also, for obvious reasons, is foreign to the point under consideration.   *Perkins v. Rudolph*, 36 Ill. 306, was a case of replevin which was referred to an arbitration without the knowledge and consent of the sureties on the replevin bond.   The stipulation in this case was in no sense submitting the case to an arbitration, but was simply an agreement to await the decision of a higher and controlling tribunal on the questions of law involved in the case.   In *Andre v. Fitzhugh*, 18 Mich. 94, an attachment suit was commenced against three of the defendants.   On the trial the plaintiff discontinued as to two of the defendants and proceeded against the third and obtained judgment.   It was held that the sureties were discharged, and for the best of reasons, viz., that such a change of parties as made in this case would not only transform the cause of action from a joint to an individual one, but would necessarily alter the operation of the con-

tract of the sureties, and without their consent.   In *People v. Brown*, 2 Doug. (Mich.) 9, a joint and several bond for the faithful performance of the duties of sheriff, drawn in the penalty of $25,000, after having been signed by the sheriff, and six coöbligors and his sureties, was altered by the judges of the circuit court, who were empowered to direct the amount of the penalty, by making the penal sum $20,000, and was then signed by seventeen other sureties, and approved and filed according to the statute.    *Held*, That the bond was void as to the six sureties who signed before the alteration was made, but valid as to those who signed afterwards.    This case raised an entirely different question, viz., the question of the responsibility of sureties on altered instruments.

And so with all the other cases cited by respondents in both briefs.   They sustain the general propositions that the liability of a surety is to be construed strictly and cannot be varied or enlarged by judicial construction; or that the plaintiff has no right to stay the execution after its levy on property of the principal until the lien is lost, or to grant to the principal indulgence after the debt has been matured; and cases of a similar character based upon well established equity principles; but they have failed to cite a case, indeed we believe that none can be found, which will sustain the action of the court in sustaining the demurrers to this complaint.

The judgment is, therefore, reversed, and the cause remanded with instructions to overrule the demurrer to the complaint.

SCOTT, HOYT, ANDERS and STILES, JJ., concur.