[No. 8418. Department One. March 2, 1910.]

DAVID SANPERE *et al.*, *Respondents*, v. WALTER S. SANPAIR *et al.*, *Appellants.*[1]

CANCELLATION OF INSTRUMENTS—DEEDS—VALIDITY—ASSENT—EVI-DENCE—SUFFICIENCY. The evidence sustains findings that deeds and leases executed by an aged couple to their nephews were void and without the assent of the parties, where it appears that the grantors were French Canadians, unable to read or write the English language and had little comprehension of English or of the difference between wills, deeds, and leases; that they set out with the intention to make a will in favor of two nephews for one-third interest in their lands, with a ten-year lease in their favor; but upon deciding to will one-half to their daughter and one-fourth to the nephews, and with that intent, upon the advice of an attorney that the effect would be the same, they executed deeds for such interests, taking back life leases; and that upon learning of the consequence of their acts, they repudiated the transaction and refused to recognize the leases or accept a division of the crops thereunder.

APPEAL—REVIEW—HARMLESS ERROR — EVIDENCE — CONCLUSION OF WITNESS. Where attorneys had testified to all that was said and done upon the execution of certain deeds in the way of explaining their effect to the grantors, who they testified apparently had a perfect understanding of the transaction, it is not error to exclude further questions as to whether they "explained the nature and character of the transaction"; since the question had already been answered and was objectionable as calling for a conclusion.

Appeal from a judgment of the superior court for Stevens county, Carey, J., entered April 8, 1909, upon findings in favor of the plaintiffs, in an action for equitable relief. Affirmed.

*Jesseph & Grinstead* and *Baldwin & Webb*, for appellants.

*H. G. Kirkpatrick* and *Merritt, Oswald & Merritt*, for respondents.

MORRIS, J.—In this action the respondents sought to set aside certain deeds and leases executed March 18, 1908, upon the ground of lack of consideration, fraud, and no compre-

[1]Reported in 107 Pac. 369.

hension of the nature and character of the transactions. Issue being joined, trial was had, and upon the entry of judgment in plaintiffs' behalf, the case is brought here.

The main error assigned is insufficiency of the evidence to sustain the findings. We cannot go into the record at length and recite the testimony given upon the questions involved, but will set out the main facts. The respondents were French Canadians, and owned three hundred and twenty acres of land, in Stevens county. David Sanpere was seventy years of age, and his wife some years younger. They were uneducated, unable to read or write the English language, could not write their names, and had little comprehension or conception of transactions of the character here involved. The wife, although she had lived over forty years in Stevens county upon the property in question, knew but little of our language or the use and meaning of words. She refers to such lack of understanding and says: "You see I never talk English before. I start only three or four years ago to talk English. I always talk French." The testimony of both of these old people shows they did not know or appreciate the difference between wills, deeds, and leases, all of which are involved in this controversy. Referring to a lease given to appellants for ten years, she says: "He makes up some—what you call them? some kind of paper for five years' work the ranch."

The appellants are nephews of David Sanpere, and had only known their uncle for a short time; Guy Sanpair having met respondents in 1905, and Walter in 1907. They lived with their uncle during the winter of 1907 and the spring of 1908, and during that time the old people seem to have become fond of them, to have placed much confidence in them, and had frequent conversations with them in regard to leaving some of their property to them. David Sanpere testifies that the boys would frequently ask him to make a will, especially Guy who was very solicitous in this regard. Finally, in March, 1908, the old people seemed to have made up

their minds to make a will, and divide their property between the two boys and their daughter, a Mrs. Welty, each to receive one-third. In addition, they agreed to give appellants a lease upon the ranch for ten years. This lease was drawn up and executed March 14, and at the same time the attorney who drew the same was given instructions to prepare wills by which each of the boys would receive one-third of the property.

On March 18, Mrs. Sanpere and Guy started for Kettle Falls to complete the execution of the wills, leaving Mr. Sanpere and Walter to follow later on in the day. When Mrs. Sanpere reached Kettle Falls, she objected to the division under which her daughter would only receive one-third of the property, and announced her intention of giving one-half of the property to the daughter and the other half to Guy and Walter. The attorney informed them that the wills could not be changed that day, but the same purpose would be effected by giving deeds to the daughter and the boys and taking back life leases, and Guy was sent back to the ranch for the daughter and a description of the property. When the old gentleman arrived, he was informed of the new arrangement and, upon his understanding that it would have the same effect as the making of wills, he consented to the new plan.

The main controversy arises over what occurred in the attorney's office. The respondents say they thought the new arrangement was the same as the old; that they could still retain possession and control over the property. It was their understanding that it was another way of making a will, and to use the language of the record, the old gentleman thought "if he wanted to break the will, he just threw it in the fire; he didn't mean to give it for all time." It is also testified to that they were informed by the attorney that they could still sell the land at any time and put the money in the bank.

There can be little doubt from reading the record that the old people executed these deeds and leases under the intention and understanding that they were making a testamentary

disposition of their property, and that they had no compre-
hension of the true character of the situation as expressed
in the papers they executed.   There can be little doubt that,
on account of their lack of knowledge and their poor under-
standing of the meaning and effect of the terms employed in
this involved transaction, they had no adequate conception of
the nature and consequence of their act.   They thought they
were executing wills and as soon as they understood the real
nature of the transaction, they repudiated it, refused to
recognize the leases, or to accept a division of the crop upon
the terms set forth in the lease.   They neither comprehended,
nor were they capable of comprehending, the nature and con-
sequence of their act.   They would not believe their daughter
when she attempted to explain it to them, and finally came
to a true understanding of the transaction in accepting the
judgment of an attorney in whose opinion they had con-
fidence.   No citation of authority is necessary to show that
equity will avoid conveyances executed under such circum-
stances, as they lack the first element of an enforceable con-
tract, "the meeting of minds."

Appellants complain of error of the court in not permitting
the attorneys who drew up the papers to testify to all that
occurred in their presence, upon the ground that it was pri-
vileged.   If the record sustained this assignment it would be
error, as under the circumstances there was no privilege.   A
client cannot testify to what occurred between himself and
an attorney, and then prevent the attorney from giving evi-
dence upon the ground of privilege.   The client in giving
his testimony has robbed the transaction of the essential
element of confidential communication, by voluntarily dis-
closing it; he himself has broken the seal of the privilege and
cannot restore it.   *Hall & Paulson Furniture Co. v. Wilbur*,
4 Wash. 644, 30 Pac. 665; *Hunt v. Blackburn*, 128 U. S.
464.

There were two attorneys present at the time, and both
testified.   One detailed the conversation he had with respond-

ents, what they said to him, what he said to them, how they wanted the property divided, and how he suggested it could be done; that the papers were carefully read and explained to all present by his partner and by Guy Sanpair, and that the respondents appeared to have a perfect understanding of the nature of the instruments and of the transaction. He was asked this question: "Did you explain the nature of and character of the transaction?" to which objection was sustained upon the ground of leading and privilege. It was not error to sustain the objection, it only called for the attorney's conclusion of the effect of what he had previously testified to as having said to the respondents—not only to what he had said but their apparent understanding of what he had said. So that in effect the question had already been answered and it was not error to exclude it.

The other attorney testified that he read all the papers to the parties, and that Guy Sanpair also read each paper to all. Counsel for appellants then offered to show that the transaction, its nature, character, and extent, was thoroughly explained and understood by all, to which objection was made as before and, upon the further ground that it called for a conclusion. If the question was propounded in the language of the offer, it would have been subject to the last objection, and hence properly denied. However, in view of the testimony already given by the partner, its rejection upon any ground would not be regarded by us as reversible error. We fail to see what either of these attorneys could have testified to that was not, except to give their conclusions as to the understanding of the parties, and one of them was even permitted to go as far as that.

The deed to the daughter and the lease of the half conveyed to her are not involved in this appeal, she having consented to the entry of the decree.

Finding no reversible error, the judgment is affirmed.

RUDKIN, C. J., CHADWICK, GOSE, and FULLERTON, JJ., concur.