ELLIS *v.* SUTTON *et al.*

[85 South. 519, No. 21850.]

1. LANDLORD AND TENANT.  *Tenant may dispute his landlord's title by showing title in government.*

A tenant of one in possession of land, claiming title thereto, the title to which is in the United States government, may dispute his landlord's title by showing that fact; the ordinary rule which forbids a tenant disputing his landlord's title having no application in such case, because violative of public policy.

2. LANDLORD AND TENANT. *Doctrine of emblements not applicable as between claimant of government and his tenant.*

    The doctrine of emblements has no application as between one in possession of and claiming title to land, the title to which is in the United States government, and his tenant thereon, because neither the landlord nor tenant has any right in the lands or the crops grown thereon; the doctrine of emblements applying only when the planting of the land to crops has been legal.

3. PUBLIC LANDS. *Homestead application gives no title or right to cultivate where denied.*

    A person filing an application to homestead public land by that step alone acquires no title thereto or right to cultivate it in crops, where his application is denied by the United States government.

4. PUBLIC LANDS. *One cultivating public land has no right to crops.*

    The title of the United States government to public land carries with it everything growing on or affixed to the soil; and the fact that one in possession, claiming title in good faith, plants such lands to crops, gives him no right to such crops; he is only a trespasser, and the land and the crops belong to the United States government.

5. PUBLIC LANDS. *One acquiring title from government gets title to all crops unharvested, though matured at date of purchase.*

    One acquiring title from the United States government to public land gets with the land the title to all crops thereon unharvested, even though matured, at the date of his purchase, against one in possession of such land, who planted and cultivated such crops, claiming title thereto in good faith.

APPEAL from chancery court of Lawrence county.

HON. D. M. RUSSELL, Chancellor.

Suit by I. N. Ellis against Mack Sutton and others. Decree for defendants, and complainant appeals. Reversed and remanded.

*R. N. Miller* and *John H. Arrington,* for appellant.

The Suttons had no title, legal or equitable, in the lands. They had repudiated Ellis as landlord and therefore, had no equitable right to emblements as in case of landlord and tenant.

In fact the equitable doctrine of emblements as between landlord and tenant did not apply, and the whole crop severed or unsevered was in Ellis, as purchaser of the lands and we should have had decree in the court below for the value of the whole eleven bales of cotton against the bond.

A settler on public lands acquires no title, legal or equitable until he gets a patent. *Wells* v. *Pennington Company,* 39 Am. St. Rep. 758. A pre-emptor acquires no title, legal or equitable, in public lands until he pursues the regular method and acquires title by a certificate of entry or patent. *Wittebrock* v. *Wheadon,* 79 Am. St. Rep. 32.

The United States have complete title to public lands and to everything growing on the public lands. The purchaser from the Government acquires the same title to the lands and to everything growing upon the lands, which the United States had before the sale. The doctrine of emblements does not apply here. To entitle a party to emblements, the sowing of the land must have been legal.

The purchaser of land from the United States Government acquires title to the land so purchased and to everything growing at the time upon the land so purchased. *Boyer* v. *Williams,* 5 Mo. ——, 32 Am. Dec. 324. Purchaser from the Government is entitled to the crops planted prior to his purchase, though the person by whom the crops were planted had at the time of the planting a right of preemption. *Rason* v. *Qualie,* 30 Am. Dec. 659.

By purchasing lands from the United States Government the purchaser acquires title to all improvements and crops growing thereon whether severed or unsevered. *Floyd* v. *Ricks,* 14 Ark. 286, 58 Am. Dec. 374. See *Britaen* v. *McKay,* 35 Am. Dec. 738. All the above leading cases and with full notes show that a mere settler upon public land is a trespasser, and he gets no equitable right to emblements and to remove crops as in case of landlord and tenant.

Our own court in *Merrell* v. *Legrand,* 1 Howard Reports 150, holds this same doctrine, that they are tres-

passers and can hold no equitable interest. Judge SHARKEY, in this case said: "The laws of the United States prohibit persons settling on its lands and planting crops and making improvements, etc., and however general the practice, such settlers can be regarded in no other light than as trespassers."

The citation of our own cases where tenants are permitted to enter and remove crops after term expires and what not, have no sort of application. In this case the Suttons were mere occupants of the land—they knew it was public land. They knew the Act of Congress giving Ellis the preferential right to enter these lands had passed long before the crops was planted. They knew Ellis was paying the money and would get his patent long before this crop was gathered.

The court below was confused no doubt by the fact that Ellis did not live in that county or district, and by the citation of authorities predicated of the equities growing out of the relation of landlord and tenant which relation the Suttons expressly repudiated.

The law governing public lands of the United States ought to be uniformly construed as held by all the authorities. The decree of the court below ought to have been at least for Ellis for all the cotton or enough of it in value to pay him four hundred dollars, which sum he was generous enough to offer to accept in lieu of all of it. He claimed nothing as a landlord, see page 5 record, because he could not claim to be landlord of government land, but he offered to settle with Sutton as if he were landlord and this offer Sutton repudiated. This would be equity and fair play between the parties.

The Suttons had used this land two years of which they were estopped to deny Ellis to be the owner, having paid him rent for it for many years at that rate.

*Magee & Gibson,* for appellee.

We submit, that until the Government parted with the title to this land no one had any right to collect rent

thereon, except perhaps the appellees, who were rightfully and lawfully in possession under their certificate of entry.

Most assuredly, appellant was never rightfully in possession of said land until the Government parted with the title and issued to him the patent under which he now claims, and he cannot be allowed to profit by a wrongful and unlawful possession—he cannot be allowed to collect rent on a part of the public domain.

Both appellant and appellees have always known the land in question to be public land of the United States. So neither, appellant nor appellees had any vested right in the land. The legal title to public lands is vested in the United States Government.

The power of Congress over public lands is plenary so long as title thereto remains in the Government, and no right of property therein has vested in another. *Northern Pacific R. R. Co.* v. *Smith,* 171 U. S. 260, 43 Law Ed. 157; *Campbell* v. *Wade,* 132 U. S. 34, 33 Law Ed. 240; *Buxton* v. *Trover,* 130 U. S. 232, 32 Law Ed. 920.

Squatter rights and rights of a kindred nature, with reference to public lands, are absolutely ended and abrogated when the government makes a survey of same. And further if the title to land is in the government—public land—a tenant is not bound by the ordinary rule which forbids him to dispute his landlord's title, but on the contrary the tenant may show the land to be public. To hold otherwise would be against public policy. *Bain* v. ———, 35 Texas, 79; *Willis* v. *McKinnon,* 35 Texas, App. Div. 131; *Wilder* v. *McComb,* 10 Texas Civ. App. 85, 30 S. W. 822.

Appellant in this case has taken a dual position: First, that when he secured a patent to the land from the government, he thereby acquired everything upon the land, *fructus naturales* and *fructus industriales.* Second, that appellees were his tenants and owned him two years' rent, at two hundred dollars per year, or four hundred dollars for the years 1918 and 1919. Answering these conten-

tions of appellant, we say that the matured crops *fructus industriales* were not acquired by appellant under his patent, and as authority for this statement, we call the court's attention to the following cases:

"If one in possession of public lands ploughs it and sows grain, the title to the growing crop is in him, as against one who afterwards enters and attempts to claim it as a pre-emptor but who does not get possession." *West v. Smith,* 52 Cal. 322.

"One in possession of public land, and in good faith endeavoring to perfect his title, is entitled to crops grown and harvested by him during his possession, as against another who is finally adjudged to be owner by virtue of an entry and made by himself. *Rathboen* v. *Boyd,* 30 Kan. 485, 2 Pac. 664.

A settler on unoccupied land, who redeems it from a state of nature in the hope of a future pre-emption right under liberal legislation of Congress, will not be accountable for fruits to one whose title was uncertain at the time of the settlement, and who, on its completion, sues the possessor. *Pearce* v. *Frantum,* 16 La. 414.

Where a crop has fully matured at the date of the termination of a lease, the tenant has the right to the crop although it is still unsevered; and, on the principle that after the termination of a lease the tenant has a reasonable time in which to take away his personal effects, he had a reasonable time in which to remove a matured crop, and even though he fails to remove the crop, the title to it does not by reason of such failure, vest in the landlord. A tenant holding by a tenure which is uncertain as to the time at which it will cease, is entitled to take off, after it has ceased, a crop that he planted in due course of husbandry and for that purpose he is entitled to re-enter and harvest the crop. Accordingly if one buys land knowing that the possessor is a tenant at will of the seller, he cannot defeat such tenant's right to his crops. The principle of these cases is, that where a person is in possession of land under a title that may be determined by an uncertain

event not within his control, it is essential to the interest of agriculture that such a determination of his lease shall not prevent him from reaping what he has sown. 8 R. C. L., pages 364-5; *Opperman* v. *Littlejohn,* 98 Miss. 636.

If appellant had acquired title before maturity of the crop another question might arise, but under the law as declared by the great majority of decisions, a matured crop, whether severed from the soil or not is the property of him who planted and cultivated it.

The appellees as *bona-fide* entrymen planted and cultivated the crop in question and their legal right to the fruits of their toil is beyond question. The crop had matured and some of it had been gathered, or severed from the soil at the time appellant acquired his patent to the land on which the crop was produced. Before appellant acquired title to the land he had no right to demand rent thereon; in fact the law prohibited him from enclosing or claiming the land and any contract he might make with reference to this public land or any claim he might assert to said land subjected him to a criminal prosecution in the Federal court of the state. Acts of February 25, 1885, 23 Status, L. 321.

If appellees were the tenants of the appellant, they were the tenants at his will or sufferance, and that only from the date of appellant's patent, September 8th to November 1, 1919, which was for a period of two months less eight days, and the trial court awarded appellant two months' pay for the use and occupation of the land.

The question then is, can appellant be allowed to collect rent on land which was a part of the unsurveyed public domain at the very time for which rent is claimed? We respectfully submit that appellant can find no warrant of law allowing him to thus collect rent. We submit that the chancellor allowed him all the law will permit.

The authorities submitted by appellant in his brief are not in point here, nearly all of them have reference to growing crops and not to mature crops, and those which refer

to matured crops were adjudicated from facts showing that the crops were planted at a time when it would be impossible for the tenant to harvest before the expiration of the lease, or that the tenant's holding was unlawful.

In the case at bar the doctrine of emblements applies, because the possession and planting and cultivation of the land by appellees were lawful. They had secured a government survey of this public land, and had made application to enter same as a homestead and with their certificate of entry were in possession thereof. Every lawful step required of a homesteader to secure the land as a homestead had been taken by appellees. At this time their claim and right to the land was superior to that of appellant because the Sovereign, the Government, had placed them in possession of the land, and under the law they were required to stay in possession and actually live upon, use and cultivate the land in order to perfect their entries as homesteaders and obtain a patent therefor.

If appellant, after securing the patent for the land, had so desired, he could have instituted unlawful entry and detainer or other possessory action against appellees, and in this way secured possession of the land; and had this been done could he have recovered rent on the land for a longer period than from the date of his patent to the date of surrender of the possession by appellee? Assuredly not.

The judgment in such a case would have been for appellant for the possession, and with provision as indicated by our statutes for the payment of rent or for use and occupation after the date of appellant's patent. In such case no one would contend that appellant would be entitled to rent for two years; and we submit there is just as much reason for claiming rent for two years in the case at bar.

We very respectfully submit that the action of the lower court ought to be affirmed.

ANDERSON, J., delivered the opinion of the court.

This is a bill in chancery by the appellant, Ellis, against the appellees, Mack Sutton and John P. Sutton, and their

tenants on certain lands in Lawrence county described in the bill, the title to which land appellant owned, alleging that the crops raised on said land by the appellees, the Suttons and their tenants, the other appellees, during 1919, belonged to appellant, and were by the appellees, who were insolvent, being harvested and sold, and that they would make way with the proceeds thereof, thereby defeating the right of appellant to said crops, if not restrained by injunction which was prayed for. Accordingly an injunction was issued and served on the appellees, which later was dissolved on their motion. The appellees, the Suttons, alone answered the bill. It is not deemed necessary to set out further the substance of the pleadings in view of the fact that the cause was tried on an agreed state of facts which were within the issues raised by the pleadings. The facts are as follows:

The land on which the crops in question were raised consisted of two hundred thirty-five acres known as "Jelk's bend" on Pearl river. Appellant, Ellis, bought this land at a chancery sale in 1906, from which time until the early part of 1918 the appellees, the Suttons, raised no question as to his title thereto. In fact for several years prior to and up to and including the year 1917 they rented this land from appellant, paying him two hundred dollars a year rent therefor. In the early part of the year 1918 each of the Suttons notified the appellant, in writing, that this was public land; that the title was in the United States; that it had never been surveyed and platted; that each of them had made application to the government to homestead certain parts of the land which applications were then pending, and that by virtue of such applications they claimed the right to occupy and cultivate said land and to receive the rents and issues therefrom, and that, beginning with that year, they would no longer recognize the appellant as their landlord and the owner of said land.

On the application of the appellees, the Suttons, the government had this land surveyed and platted; and afterwards, on December 1, 1917, one of them, Mack Sutton, filed a homestead application for part of the land, one hundred twenty-six and sixty-eight hundredths acres, and the

other, John P. Sutton, on the same date, filed a like application for one hundred eight and fourteen hundredths acres, being the balance of the tract.

The next most important step in the history of this controversy took place when Congress passed an act for the relief of appellant, which was approved March 4, 1919, which, leaving off the formal parts, is as follows:

"That I. N. Ellis be permitted to purchase from the United States at the price of one dollar and twenty-five cents per acre lots 6 and 7 of section 3, and lots 4, 5, 6. 7, 8, 9, 10, and 11 of section 10, township 8 North, range 21 West, of the Saint Stephens Meridian survey, in Lawrence county, Mississippi, containing 234 82-100 acres: Provided, that nothing herein contained shall be so construed as to deprive Mack and John P. Sutton of any rights that they may have under their pending applications, to make entry of portions of said lands under the Homestead Laws: Provided further, that applications for the purchase must be filed within six months from the passage of this act."

Thereupon the appellant and the appellees, the Suttons, first fought out their respective claims to this land before the Commissioner of the General Land Office, and appellant lost. Ellis, the appellant, then appealed the cause to the Secretary of the Interior, who rendered a decision, in writing, reversing the Commissioner of the General Land Office, in which, after reviewing the evidence as to the claims of the respective parties, he concluded in this language:

"In the year of 1906 this land with other adjacent lands was sold to I. N. Ellis, the present claimant, in settlement of the estate of Youngblood. Since that date Ellis has been in the open, notorious, and undisputed possession of the said lands, using and improving it and paying taxes upon it. For several years the Sutton applicants have rented the lands from Ellis, and have used it for farming purposes. Correspondence in the records clearly shows that the Suttons did not claim right of possession, but recognized the claim of Ellis and paid rent money to him and submitted bills to him for payment, when any repairs or improvements were made.

"As above stated the applications of the Suttons to make entry, filed prior to the official filing of the plat of survey, were of no effect, and no equities appear in their behalf comparable to the equities of Ellis who purchased the land many years ago. Therefore the applications and claims of the Suttons are rejected, and Ellis will be allowed to purchase the lands under the terms of the said act of Congress.

"The decision appealed from is accordingly reversed."

Accordingly there was then issued to appellant a certificate of entry and patent to the land under date of September 8, 1919, which patent was duly recorded in Lawrence county. Thereupon the appellant, conceiving himself to be the true owner of the land from September 8, 1919, by virtue of said certificate of entry and patent, went upon it and demanded of appellees a reasonable rent for the land for the years 1918 and 1919, two hundred dollars a year, the amount they had been paying before, or the entire crops then on the land, if appellees refused to recognize appellant as their landlord for said years. Appellees refused to accede to the demands of appellant, and the latter then filed the bill in this cause.

Appellant expressly set out in his bill that as to the tenants under the appellees, the Suttons, he made no claim to their three-fourths interest in the crops produced by them on this land, but insisted that he was at least entitled to the one-fourth interest which they had agreed to pay their said landlords as rent, and this he claimed.

In lieu of the appointment of a receiver to take charge of and harvest the crops which appellant applied for, the court made an order authorizing appellees, the Suttons, to give bond in the sum of five hundred dollars, conditioned to pay whatever decree the court might render against them. Accordingly such a bond was given by them, and they then proceeded to gather and sell the crops on the land, the proceeds of which they retained, at least so far as their one-fourth interest was concerned, which they claimed as landlords of the other appellees, their tenants, and about November 1, 1919, they surrendered the land to appellant.

On September 8, 1919, when appellant got his certificate of entry and patent to the land, the crops on the land had matured, but were unharvested, with the exception of a small part of the cotton crop. The court below found in its decree that two hundred dollars was a reasonable annual rental for the land, and that, appellees having retained possession of it for two months after the time appellant acquired title from the government, the court rendered a decree in favor of appellant for one-sixth of a full year's rent, which amounted to thirty-three dollars and thirty-three cents. From this decree appellant prosecutes this appeal.

The question is whether the crops unharvested on this land on September 8, 1919, the date when the title of appellant to the land was acquired from the government, then became the property of appellant, or, as against appellant, the appellees had a better right to such crops. The facts that the appellees, the Suttons, for years prior to the time this controversy arose between them and the appellant as to the title to this land, were the tenants thereon of appellant, and recognized his title thereto, does not bar them from disputing his title. If land is public land— the title in the government—a tenant is not bound by the ordinary rule which forbids him to dispute his landlord's title. On the contrary he may show the title to be in the government. It would be against public policy to hold otherwise. *Welder* v. *McComb,* 10 Tex. Civ. App. 85, 30 S. W. 822.

Up to September 8, 1919, neither the appellant nor the appellees had any right or title whatever to this land. It was public land; the title was in the United States, as were all crops grown thereon, and, while public land, no one could acquire any right to plant it to crops and harvest the same. A pre-emptor, or person filing application to homestead public land, by that step alone acquires no title thereto or right to cultivate it in crops, where his application is denied by the government. The title of the United States carries with it everything growing on or affixed to the land. The doctrine of emblements has no application except where the sowing of the land was legal. A purchaser of land from the United States gets the crops

planted thereon prior to his purchase and standing on the land at the time his conveyance takes effect. *Boyer* v. *Williams,* 5 Mo. 335, 32 Am. Dec. 324; *Rasor* v. *Qualls,* 4 Blackford (Ind.), 286, 30 Am. Dec. 658; *Wittenbrock* v. *Wheadon,* 128 Cal. 150, 60 Pac. 664, 79 Am. St. Rep. 32; *Floyd* v. *Ricks,* 14 Ark. 286, 58 Am. Dec. 374. Prior and up to September 8, 1919, the date when appellant acquired title from the United States to this land, both appellant and appellees, as well as all others growing crops on the land, were naked trespassers thereon; and all crops grown on the land by them belonged to and were the property of the United States. It follows from these principles that the crops standing on the land on September 8, 1919, when appellant got title, belonged to him.

Under the pleadings in this case, however, appellant is estopped to claim more than one-fourth of the crops, the share the tenants of the appellees, the Suttons, agreed to pay them as rent for the lands for 1919, because appellant in his bill expressly waived any claim to more, and this may have led the tenants, the other appellees, to refrain from answering the bill and contesting the case stated in the bill. Appellant is bound by his solemn pleading.

*Reversed and remanded.*