[No. 22677. Department Two. March 5, 1931.]

LAURELHURST CLUB, INCORPORATED, *Respondent,* v. LEROY M. BACKUS *et al., Appellants.*[1]

[1]Reported in 296 Pac. 819.

*Carkeek, McDonald & Harris,* for appellants.

*Stratton & Kane* and *Herbert S. Little,* for respondent.

MILLARD, J.—This is an appeal by the defendants from judgment on the pleadings in favor of the plaintiff, in an action of unlawful detainer.

It appears from respondent's complaint that, on June 28, 1922, the Port of Seattle leased to the respondent the waterway in front of, and adjoining, lots fifteen and sixteen, block eighteen, of Laurelhurst Heights Addition to Seattle, and south of lot twenty-six, block five, Lake Washington Shore Lands Division Number Two. On February 8, 1927, the Port of Seattle granted to the respondent an extension of that lease. On August 22, 1925, the respondent, by written agreement, sublet the above-described property to the appellants. On July 5, 1929, the Port of Seattle notified the respondent that the subletting of any of the property to the appellants was without the consent of the Port, and contrary to the provisions of the agreement "that this lease shall not be assigned, nor shall the whole or any part of the leased premises be sublet, without the permission of the lessor."

Under the terms of the leasing agreement of respondent with the appellants, the latter were obligated to construct a residence within two years, and improve and develop their property in a suitable manner as residential grounds of their home within a reasonable time. In the event of a subdivision of their home property before building a residence thereon, the appellants agreed to place the residence upon the southerly one-half of their property, and adjacent to the waterway described above.

Respondent alleged appellants breached that agreement, in failing to construct a residence upon the prop-

erty; and that, in violation of their agreement with the respondent, the appellants had commenced to subdivide their property, and, under the plans of such subdivision, the appellants had proceeded to sell to the public that portion of their premises adjacent to the waterway covered by the leasing agreement; that, despite a thirty-day notice served upon appellants August 21, 1929, to vacate the premises, the appellants had continued in possession of the property.

Appellants, by their answer, alleged that, on February 8, 1927, the Port of Seattle granted to respondent an extension of its original lease to the waterway, and admitted agreeing that, if their home property was subdivided prior to the building of a residence thereon, the residence would be placed upon the portion adjacent to the waterway; that

". . . they remained in possession of the said premises until on or about December 10, 1929, on or about which date, the defendants (appellants) moved from said premises and are not now in possession thereof."

Appellants affirmatively alleged compliance with the provisions of the lease; expenditure of forty thousand dollars in the improvement of the property, and in the construction of a residence thereon; that their lease provided that, after the rights granted became effective, appellants should continue during the term of the present lease of the waterway from the Port of Seattle to the respondent, and any renewal or extension thereof that might be granted; that the lease of February 8, 1927, was a renewal of the lease held by the respondent at the time appellants entered into their lease; that, relying upon their lease, and the fact that it gave to them the same rights under any renewal or extension of the lease from the Port of Seattle, the appellants entered into possession of the premises, and made val-

uable improvements thereon, with the knowledge and consent of the respondent, and that, by reason thereof, the respondent is estopped from bringing this action.

The respondent joined issue with appellants on all of the affirmative allegations in the answer, except that it alleged that appellants had surrendered possession, and all right, title and interest in and to said premises.

Respondent's motion for judgment on the pleadings was granted on the grounds that, first, the appellants could not dispute their landlord's title; and, second, the pleadings showed no consent was given by the Port Commission to the sublease by the respondent to the appellants.

Respondent argues "that the appellants, having admittedly moved from possession, and assigned a purely personal and non-assignable lease, have no rights therein either as against the respondent or its assignee."

Appellants sold the upland property, taking back a purchase money mortgage from the vendee. If, contend appellants, they foreclosed the mortgage, and became the owners of the upland, they would be entitled, under their lease from respondent, to occupy the waterway.

The point made by respondent that the appellants had moved out of possession, the trial court held was not well taken, as the right to possession was still involved. The court's ruling was correct.

"The respondents have moved to dismiss the appeal on the ground that the question as to the right to possession is at this time a moot one. The respondents in their brief contend that the appellants surrendered possession after the expiration of their supposed one year's extension, to wit, October 31, 1920. It may be true that, at the time of the hearing here, the appellants had surrendered possession of the premises and that the question of restitution at this time is not in-

volved, but the appellants' right to possession is involved, as is also the question of damage which they must pay for any wrongful possession. There is no merit in the motion to dismiss." *Lochridge v. Natsuhara,* 114 Wash. 326, 194 Pac. 974.

The trial court stated that one of the grounds for granting the motion for judgment on the pleadings, was that a tenant is estopped to deny the title of his landlord. The court's decision was based upon the case of *Hall & Paulsen Furniture Co. v. Wilbur,* 4 Wash. 644, 30 Pac. 665, in which we held that the lessees of tide lands from a person in possession thereof cannot, in an action for unlawful detainer, dispute the title of their landlord.

It should not be forgotten that, at that time, there was no law against the occupation of tide lands, hence the case is not in point. In the course of that opinion we said:

"There was not at the time this lease was executed, nor is there now, any law against the occupation of tide lands. True, until the acts of 1890, occupants of such lands were technically trespassers, and their structures were purprestures. But neither the federal government, nor the territory, nor the state ever sought to interfere with such occupancy, whether it was taken in good faith or not. On the contrary, by its implied declarations in the tide land acts, the state has approved such occupancy when taken in good faith prior to the passage of those acts. For its own purposes it has seen fit to withdraw that encouragement from any subsequent occupiers, but it has not yet pronounced it either unlawful or immoral to so occupy. Therefore, it was not unlawful for these parties to contract with reference to a possession which the respondent had."

The general rule is, as contended by respondent, that

"The tenant cannot defend by showing that the landlord had no title at the time when the lease was given,

as he is estopped to deny the title of the landlord at that time; . . ." 36 C. J., p. 646, § 1847.

That rule is subject to the exception, however, that the tenant is not estopped to deny the title of his landlord, where the lease is illegal or contrary to public policy.

"If land is public land—the title in the government —a tenant is not bound by the ordinary rule which forbids him to dispute his landlord's title. On the contrary he may show the title to be in the government. It would be against public policy to hold otherwise." *Ellis v. Sutton,* 126 Miss. 102, 88 South. 519.

██ Waterways are not subject to sale or lease. The statute, expressly forbidding the lease of waterways, reads as follows:

"All the public ways that may be established under the provisions of this chapter are, and shall forever be, reserved from sale or lease as public ways for water craft." Rem. Comp. Stat., § 9597.

The act under which the waterway in question was platted provides:

"Sec. 5. The provisions of any existing law of this state relating to the selection, survey, management, reclamation, lease and disposition of the states granted, school, tide, oyster and other lands or harbor areas, or any other law of this state applicable thereto shall control and govern the establishment of the harbor lines, survey, platting, appraisal, sale and disposition of the shore lands mentioned in this act, except as modified, altered or repealed by the provisions of this act." Laws of 1907, ch. 3, p. 6.

The laws relating to public lands were codified by the legislature in 1927. Sections 107 and 108, ch. 255, Laws of 1927, pp. 521, 522, reading as follows, provide that waterways heretofore and hereafter established shall be reserved from sale or lease as public ways for water craft, until vacated as provided in the act:

"Sec. 107. It shall be the duty of the commissioner of public lands to, simultaneously with the establishment of harbor lines and the determination of harbor areas in front of any city or town, or as soon thereafter as practicable, survey and plat all tide and shore lands of the first class not heretofore platted, and in platting the same to lay out streets which shall thereby be dedicated to public use, subject to the control of the cities or towns in which they are situated, and establish one or more public waterways not less than fifty nor more than one thousand feet wide, beginning at the outer harbor line and extending inland across the tide lands belonging to the state, which waterways shall include within their boundaries, as near as practicable, all navigable streams running through such tide lands, and shall be located at such other places as in the judgment of the commissioner of public lands may be necessary for the present and future convenience of commerce, and such waterways heretofore established under former laws or hereafter established shall be reserved from sale or lease as public ways for water craft until vacated as provided in this act, and it shall be the duty of the commissioner of public lands to appraise the value of such platted tide and shore lands and enter such appraisement in the records of his office." Rem. 1927 Sup., § 7797-107.

"Sec. 108. All alleys, streets, avenues, boulevards, waterways and other public places heretofore located and platted on the tide and shore lands of the first class, or harbor areas, as provided by law, and not heretofore vacated as provided by law, are hereby validated as public highways and dedicated to the use of the public for the purposes for which they were intended, subject however to vacation as in this act provided." Rem. 1927 Sup., § 7797-108.

Until vacated as provided in chapter 255, Laws of 1927, p. 522, a waterway can not be sold or leased or devoted to a private use. In *State v. Superior Court,* 91 Wash. 454, 157 Pac. 1097, a railway company sought to condemn a waterway in Jefferson county. We held

that a waterway could not be taken for a private use, saying:

"As is well known, the state holds title to property in two distinct capacities, the one a proprietary capacity, as individuals generally hold property, and the other a governmental capacity, that is, in trust for the public use. The rule, therefore, is that a statute conferring upon the state or other municipal corporation the general authority to sell, or a statute conferring the right to condemn state or other municipal property generally, will, in the absence of express words to the contrary, be confined to such property as it holds in its proprietary character. This principle we announced in the case of *Samish Boom Co. v. Callvert*, 27 Wash. 611, 68 Pac. 367, in the following language:

" 'The rule is that, whenever a tract of public land is once legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public lands, so that authority to sell in general terms will not be construed to embrace or operate upon it, although no reservation is made of it.'

"So, also, in *State v. Whitney*, 66 Wash. 473, 120 Pac. 116, where we quoted with approval from the case of *Wilcox v. Jackson*, 13 Pet. 498, the following:

" 'We go further, and say, that whensoever a tract of land shall have once been legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public lands; and no subsequent law, or proclamation, or sale, would be construed to embrace, or operate upon it; although no reservation were made of it.'

"Indeed, if this be not the rule, the legislature has, by the act in question, granted to railway companies power to condemn any of the state lands for railway purposes (save that of course which is specially exempted), which would include the lands on which its capitol buildings are situated.

"Unless the distinction we have suggested counsel intended to make be sound, there can be no question that the water way and the streets in question are among the exempted classes. The first was set apart for a public use in virtue of a statute duly enacted for

that purpose, and the other in virtue of the constitution itself. The lands within their boundaries thus become segregated from the general mass of the state's lands which it holds in its proprietary capacity, and become vested in that special class which it holds specially for the public use.''

The lease contravenes the public policy of this state, as expressed by positive statute. A tenant is not estopped to deny his landlord's title where the lease, as in the case at bar, is contrary to public policy.

''There is one other class of cases, however, where the action is not maintainable, not because of want of title or possession in the lessor, but because by positive statute, or because of public policy, the contract between the parties is unlawful.'' *Hall & Paulson Furniture Co. v. Wilbur,* 4 Wash. 644, 30 Pac. 665.

The judgment is reversed and the cause remanded with directions to dismiss the action.

BEALS, FULLERTON, PARKER, and MITCHELL, JJ., concur.